FILED

2005 Mar-21  PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **ROSLYN DIANE PARKS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: **CV-04-PT-2249-M** |
| | ) | |
| **HIGH COUNTRY MOTORS, INC.,** | ) | |
| **a corporation, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This cause comes on to be heard upon defendant High Country Motors Inc.'s Motion for

Partial Summary Judgment, filed on October 20, 2004.

**FACTS[1] AND PROCEDURAL HISTORY**

Plaintiff Roslyn Diane Parks ("Parks") is an adult resident of Douglasville, Georgia.

(Cmpt. ¶ 1).  Defendant Kenneth Ray Brooks ("Brooks"), now deceased, was a resident of

Batesville, Arkansas.  (*Id*. at ¶ 3).  Defendant High Country Motors, Inc. ("HCM") is a Texas

corporation with its principal place of business in Plano, Texas.  (*Id*. at ¶ 2).

On June 14, 2002, Parks was a passenger in a motor vehicle traveling westbound on I-20

in St. Clair County, Alabama.  (Cmpt. ¶ 5).  At the same time, Brooks, who was driving a tractor

trailer owned by HCM, was also traveling westbound on I-20 in St. Clair County.  (*Id*. at ¶ 6).

The tractor trailer driven by Brooks and the car in which Parks was riding became involved in an

---

[1] The court notes where "facts" appear disputed.

1

accident.  (*Id*. at ¶ 7).

Teri Roberts ("Roberts"), the Vice President of HCM, gave affidavit testimony concerning Brooks' connection with HCM.  According to Roberts, Brooks was not an employee of HCM, but was an independent contractor that HCM contracted with on occasion to make shipping deliveries using the company's tractor trailers.[2]  (Roberts Affid. ¶ 2).  For such deliveries, HCM paid Brooks a percentage of the compensation it received for each shipment. (*Id*.)  Roberts testified that HCM did not control the routes taken by Brooks when making such deliveries.  (*Id*.)  Roberts stated that, on the day of the accident, Brooks was returning from transporting a shipment from Plano, Texas to North Carolina.  (*Id*. at ¶ 3).

Roberts testified that, at the time of the accident, Brooks had approximately 25 years of experience operating tractor trailers of the type owned by HMC.  (Roberts Affid. at ¶ 5). According to Roberts, prior to allowing Brooks to operate its vehicles, HCM confirmed that he had a valid commercial driver's license and a valid medical certificate evidencing his physical ability to operate a tractor trailer.  (*Id*. at ¶ 4).

Alleging that she suffered injuries from the June 14, 2002 accident, Parks filed this action against HCM and Brooks on June 14, 2004, in the Circuit Court of St. Clair County, Alabama. In her Complaint, Parks alleges that Brooks negligently caused the accident within the scope of his employment with HCM, and that Brooks and HCM are jointly and severally liable for her injuries.  Additionally, Parks alleges in Count Three of the Complaint that HCM was negligent in

---

[2] Plaintiff disputes Roberts' contention that Brooks was an independent contractor.

2

its hiring, training and supervision of Brooks.[3]  HCM removed the action to this court on July 20,

2004 on the basis of diversity jurisdiction.  HCM filed the current motion on October 20, 2004,

seeking summary judgment on the claims presented in Count Three of the Complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings,

discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue

as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for

summary judgment bears the initial burden of explaining the basis of his motion.  *Celotex*, 477

U.S. at 323.  "It is never enough [for the movant] simply to state that the non-moving party could

not meet their burden at trial."  *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)

(quotation omitted).  The non-moving party then bears the burden of pointing to specific facts

demonstrating that there is a genuine issue of fact for trial.  *Celotex*, 477 U.S. at 324.  The non-

---

[3] Count Three of the Complaint states as follows:

> At the time of the aforementioned collision, defendant Brooks was acting as the agent, servant and/or employee of defendant High Country.

> Defendant High Country had a duty to exercise due and proper diligence in hiring, training and/or supervising its employees.

> As a direct and proximate consequence of defendant High Country's negligent, reckless, willful and/or wanton hiring, training and supervision of defendant Brooks, the plaintiff was caused to suffer the damages and injuries set forth above.

(Cmpt. ¶¶ 21-23).

moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[4]

I.   **Defendant's Motion.**

HCM argues that under Alabama law, the essential elements of a cause of action for negligent or wanton hiring, training and supervision are: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damage. *See Thompson v. Mindis Metals, Inc.,* 692 So.2d 805, 807 (Ala. 1997) (giving the required

---

[4] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

4

elements for a negligent entrustment action).[5]  According to HCM, plaintiff's claim of negligent

hiring, training and supervision fails because the evidence demonstrates that Brooks was

competent to operate a tractor trailer on the date of the accident.

The "manifestations of the incompetence of the driver [is] a basic requirement of a

negligent entrustment action."  *Pryor v. Brown & Root USA, Inc.,* 674 So.2d 45, 51 (Ala. 1995)

(citation omitted).  HCM argues that incompetency can be established only where it is "likely

because of . . . youth, inexperience, or otherwise, [that the entrusted person will use the entrusted

item] in a manner involving unreasonable risk of physical harm to himself and others."  *Stanford*

*By and Through Stanford v. Wal-Mart Stores, Inc.,* 600 So.2d 234, 236 (Ala. 1992) (quoting

Restatement (Second) of Torts § 390).  HCM further asserts that, "negligence is not synonymous

with incompetency, and a single instance of negligence will not prove an employee incompetent,

nor will it impute knowledge to his employer of incompetency; the most competent employee

may be negligent."  *Collins v. Wilkerson,* 679 So.2d 1100, 1103 (Ala. Civ. App. 1996).  *See also*

*Thedford v. Payne,* 813 So.2d 905, 912 (Ala. Civ. App. 2001) (refusing to impose liability for

negligent entrustment on the parents of any young driver involved in an accident, based solely on

the driver's youth).

Here, HCM argues, the evidence shows that, at the time of the accident, Brooks had at

---

[5] HCM asserts that under Alabama law, a claim for negligent hiring, training and supervision is synonymous with a claim for negligent entrustment.  *See Ex parte McCollough,* 747 So.2d 887, 890-91 (Ala. 1999) (stating that argument that employees were incompetent and that employer knew of incompetency could be analogized to a claim of negligent entrustment); *Lane v. Central Bank of Alabama, N.A.,* 425 So.2d 1098, 1100 (Ala. 1983) (stating that action for negligent supervision requires showing of incompetency of employee and actual or constructive knowledge of that incompetency).

least 25 years experience driving tractor trailers.  HCM also asserts that it confirmed that Brooks

had a valid commercial drivers license and a valid medical certificate before allowing him to

drive its vehicle.  According to HCM, the evidence establishes not only that Brooks was

competent to drive a tractor trailer on the date of the accident, but also that HCM had no reason

to believe that Brooks was not competent.  Therefore, HCM claims, it is entitled to judgment as a

matter of law on plaintiff's negligent and wanton hiring, training and supervision claim as set

forth in Count Three of the Complaint.

**II.**     **Plaintiff's Response.**

Plaintiff points out that, under the Federal Motor Carrier Safety Act, Congress directed

the Department of Transportation ("DOT") to prescribe minimum safety standards for

commercial motor vehicles.  49 U.S.C. § 31136(a).  Accordingly, plaintiff notes, the DOT

enacted the Federal Motor Carrier Safety Regulations ("FMCSR") as the sole safety standard to

be followed by professional truck drivers and motor carriers in operating commercial motor

vehicles.  49 C.F.R. §§ 390 et seq.

Although plaintiff disputes HCM's contention that Brooks was not an employee, plaintiff

asserts that HCM is still liable for her damages even if Brooks was an independent contractor.

According to plaintiff, pursuant to the FMCSR, motor carriers are liable for the damages and

injuries inflicted by the operator of a commercial motor vehicle even if the operator is an

independent contractor.  Plaintiff highlights the definition of "employee" under 49 CFR § 390.5,

which states:

> Employee means any individual, other than an employer, who is employed by an
> employer and who in the course of his or her employment directly affects
> commercial motor vehicle safety. Such term includes a driver of a commercial

motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.

Plaintiff also disputes HCM's claims that Brooks was competent to operate a motor vehicle at the time of the accident in question.  According to plaintiff, despite Brooks driving experience and valid commercial drivers' license and medical certificate, there is still a genuine issue of material fact as to whether Brooks was competent to operate a commercial motor vehicle at the time of the accident.

Plaintiff draws the court's attention to 49 C.F.R. § 391.11(a), which states "[a] person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle."  Plaintiff notes that an operator may be disqualified from driving a commercial motor vehicle for various reasons, including, but not limited to, criminal and other offenses. Disqualification due to such offenses is discussed in 49 CFR § 391.15(c) which states:

> (1) General rule. A driver who is convicted of (or forfeits bond or collateral upon a charge of) a disqualifying offense specified in paragraph (c)(2) of this section is disqualified for the period of time specified in paragraph (c)(3) of this section, if--
>> (i) The offense was committed during on-duty time as defined in § 395.2(a) of this subchapter or as otherwise specified; and
>> (ii) The driver is employed by a motor carrier or is engaged in activities that are in furtherance of a commercial enterprise in interstate, intrastate, or foreign commerce;
>
> (2) Disqualifying offenses. The following offenses are disqualifying offenses:
>> (i) Driving a commercial motor vehicle while under the influence of alcohol. . . .
>> (ii) Driving a commercial motor vehicle under the influence of a 21 CFR 1308.11 Schedule I identified controlled substance, an amphetamine, a narcotic drug, a formulation of an amphetamine, or a derivative of a narcotic drug;

(iii) Transportation, possession, or unlawful use of a 21 CFR 1308.11
Schedule I identified controlled substance, amphetamines, narcotic drugs,
formulations of an amphetamine, or derivatives of narcotic drugs while the
driver is on duty, as the term on-duty time is defined in § 395.2 of this
subchapter;
(iv) Leaving the scene of an accident while operating a commercial motor
vehicle; or
(v) A felony involving the use of a commercial motor vehicle. . . .

Further, 49 CFR § 391.15(d)(1) states:

General rule. A driver who is convicted of violating an out-of-service order is
disqualified for the period of time specified in paragraph (d)(2) of this section.

Plaintiff argues that the evidence shows that HCM did not meet the minimum

requirements for determining that Brooks was qualified to drive a commercial motor vehicle.

Plaintiff draws attention to HCM's Response to Plaintiff's First Set of Interrogatories.  In these

interrogatories, plaintiff asked HCM to identify all the medications that Brooks had been

prescribed within the last 15 years.  (Pl. Exh. 1, p. 3).  HCM indicated that it did not know which

medications Brooks had been prescribed.  (*Id.*)  Therefore, plaintiff contends, HCM never

determined whether Brooks had committed the disqualifying offenses outlined in 49 C.F.R. §

391.15(c)(2)(ii) and (iii).

In her First Set of Interrogatories, plaintiff also asked whether Brooks had received any

traffic citations, including convictions, within the last 15 years.  (Pl. Exh. 1, p. 4).  Again, HCM

admitted that it did not know.  (*Id.*)  Plaintiff argues that this response shows that HCM never

determined whether Brooks had ever (1) left the scene of an accident while operating a

commercial motor vehicle, (2) been convicted of a felony involving the use of a commercial

motor vehicle or (3) been convicted of violating an out-of-service order.  *See* 49 CFR §

391.15(c)(2)(iv) and (v); 49 CFR § 391.15(d)(1).  Therefore, plaintiff concludes, Brooks was not

8

qualified or competent to drive a commercial motor vehicle.

Plaintiff further contends that the FMCSR requires motor carriers to investigate some operators' driving records.  Plaintiff highlights 49 CFR § 391.25 and 49 CFR § 391.27.  Section 391.25 states:

> (a) Except as provided in subpart G of this part, each motor carrier shall, at least once every 12 months, make an inquiry into the driving record of each driver it employs, covering at least the preceding 12 months, to the appropriate agency of every State in which the driver held a commercial motor vehicle operator's license or permit during the time period.
> (b) Except as provided in subpart G of this part, each motor carrier shall, at least once every 12 months, review the driving record of each driver it employs to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle pursuant to § 391.15.
>> (1) The motor carrier must consider any evidence that the driver has violated any applicable Federal Motor Carrier Safety Regulations in this subchapter or Hazardous Materials Regulations (49 CFR chapter I, subchapter C).
>> (2) The motor carrier must consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, and must give great weight to violations, such as speeding, reckless driving, and operating while under the influence of alcohol or drugs, that indicate that the driver has exhibited a disregard for the safety of the public.
> (c) Recordkeeping.
>> (1) A copy of the response from each State agency to the inquiry required by paragraph (a) of this section shall be maintained in the driver's qualification file.
>> (2) A note, including the name of the person who performed the review of the driving record required by paragraph (b) of this section and the date of such review, shall be maintained in the driver's qualification file.

Section 391.27 states:

> (a) Except as provided in Subpart G of this part, each motor carrier shall, at least once every 12 months, require each driver it employs to prepare and furnish it with a list of all violations of motor vehicle traffic laws and ordinances (other than violations involving only parking) of which the driver has been convicted or on account of which he/she has forfeited bond or collateral during the preceding 12 months.

9

(b) Each driver shall furnish the list required in accordance with paragraph (a) of this section. If the driver has not been convicted of, or forfeited bond or collateral on account of, any violation which must be listed, he/she shall so certify.
(c) The form of the driver's list or certification shall be prescribed by the motor carrier. . . . .

In light of the fact that HCM did not know whether Brooks had received any traffic citations, including convictions, withing the last 15 years, plaintiff maintains, it is clear that HCM did not perform its required duties.  Furthermore, plaintiff notes, in her First Request for Production of Documents, she asked for all documents reflecting whether Brooks had received any traffic citations within the last 15 years.  (Pl. Exh. 2, pp. 3-4).  HCM responded that it had no such documents.  (*Id.* at 4).  According to plaintiff, this response illustrates that HCM did not perform the minimum duties required of motor carriers under FMCSR for qualifying drivers.  Given this, plaintiff concludes, a genuine issue of material fact exist as to HCM's knowledge of Brooks' incompetence.[6]

## CONCLUSIONS OF THE COURT

The defendant HCM has not responded to the plaintiff's argument that under 49 CFR § 390.5 an "employee" includes an "independent contractor."  The court will deny the motion and not otherwise address the negligent entrustment issue.  It may be that the plaintiff has the burden of proving that the alleged failures of the defendant to determine whether Brooks was qualified somehow proximately caused the accident.  The parties should address this issue with further briefs.  It may or may not be that incompetence would have been discovered if HCM had followed the required procedures.  If following the procedure would not have served to establish incompetence, that failure may be irrelevant.

---

[6] HCM did not file a Reply brief in this matter.

This 21st of March, 2005.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**